**SIGNED THIS: November 12, 2009**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

```
In Re                           )
                                )   In Bankruptcy
JEFFREY A. URQUHART and         )
TEANNA L. URQUHART,             )   Case No. 09-71058
                                )
        Debtors.                )
```

# O P I N I O N

The issue before the Court in this Chapter 13 case is whether parochial school tuition expenses of $600 per month for Debtors' two sons are reasonable and necessary and, therefore, properly included in the Debtors' calculation of their projected disposable income. For the reasons set forth below, the Court finds that, in this case, the expenses are reasonable and necessary. Thus, the Trustee's objection to confirmation of the Debtors' Second Amended Chapter 13 Plan on the basis that the Debtors are not committing

-1-

all of their projected disposable income to plan payments will be overruled.

On April 10, 2009, Jeffrey A. Urquhart and Teanna L. Urquhart ("Debtors") filed their Chapter 13 petition, required schedules, Statement of Financial Affairs, and Form B22C Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("B22C"). Debtors' schedules disclose that Debtors are married and living together, are both employed, and that their household includes two sons, now aged 11 and 15.[1] The schedules also show that Debtors have a combined average monthly net income of $4,339.30 and that, among their expenses, Debtors expend $600 per month on parochial school tuition for their two sons.

Debtors' B22C shows an annualized current monthly income of $65,626.80, which is well below the applicable median family income for a household of four persons in Illinois of $81,184. Accordingly, Debtors' applicable commitment period for their Plan payments is three years. *See* 11 U.S.C. §1325(b)(4)(A). Neither the amount of Debtors' income nor Debtors' applicable commitment period is in dispute.

On July 9, 2009, Debtors filed their Second Amended Chapter 13 Plan ("Plan"), which provided for monthly payments to the

---

[1] The younger boy is Debtors' son; the older boy is Mrs. Urquhart's son and Mr. Urquhart's step-son. However, for purposes of this Opinion, both minors will be referred to as Debtors' sons.

Trustee of $693.03 for a duration of 36 months. In their Plan, Debtors estimate that their unsecured claims will be paid at least 41.5%. On July 17, 2009, John H. Germeraad, Chapter 13 Trustee ("Trustee"), filed his Objection to Confirmation of Debtors' Second Amended Plan. The basis of Trustee's Objection is that the proposed Plan does not devote all of the Debtors' projected disposable income to be received during the applicable commitment period to Plan payments for unsecured creditors. *See* 11 U.S.C. §1325(b)(1)(B). Specifically, Trustee contends that parochial school tuition is not a reasonably necessary expense and that, by spending $600 per month for parochial school tuition for their sons, Debtors are not committing all of their projected disposable income to the Plan. Trustee suggests that Debtors increase their monthly Plan payments or extend the duration of their Plan.[2]

The parties briefed the issue of whether, and under what circumstances, private school tuition can be a reasonable and necessary expense. An evidentiary hearing was held on October 1, 2009, at which Mrs. Urquhart was the sole witness. Mrs. Urquhart testified that she and her husband based their decision to send their sons to parochial school and, thus, to incur that ongoing tuition expense, upon a number of factors. The family lives in

---

[2] A second objection regarding the priority treatment of traffic fines owed to the Effingham County Circuit Court has been conceded by Debtors, and they have stated their intent to file a Third Amended Plan to address that objection.

Decatur, Illinois, and, according to Mrs. Urquhart, the Decatur public schools are plagued with violence, poor test scores, and, in Mrs. Urquhart's estimation, substandard faculty and administration.  Mrs. Urquhart testified that she and her husband sent their older son to Benjamin Franklin Elementary School - a public school - for three years, during which time he experienced bullying so severe that he asked to be allowed to live with his father so that he could attend a different school.  Mrs. Urquhart also testified that she became more concerned about the quality of the education her older son was receiving when she discussed his academic performance with his teacher.  Mrs. Urquhart stated that she was told by her son's teacher that her son was finishing his work too quickly, and that Mrs. Urquhart needed to find something for her son to do with his extra time while at school.  Debtors became alarmed when a neighbor girl was sexually assaulted by fellow students at the school.  Mrs. Urquhart testified that the superintendent, when asked about the incident, stated that there was nothing he could do about it and that he could not guarantee the safety of the students.  This incident led the Debtors to withdraw their older son from Benjamin Franklin Elementary School and enroll him in parochial school.  Largely because of these experiences, when the time came for Debtors' younger son to go to school, Debtors passed on the public school option and enrolled him in parochial school.

Although she herself is not of the Roman Catholic faith, Mrs. Urquhart testified that her husband is, and that their sons are being raised Catholic and are practicing Catholics. The entire family attends Catholic mass weekly. Mrs. Urquhart stated that she and her husband decided quite some time ago to make the necessary sacrifices in order to send their sons to parochial schools. Debtors' younger son attends Our Lady of Lourdes Parish Grade School, which is affiliated with the church the family attends. If he were to attend public school, he would attend Benjamin Franklin Elementary School, the elementary school which his older brother previously attended. Debtors' older son attends St. Teresa High School. If he were to attend public school, he would attend MacArthur High School. Beyond the motivating factors stated above, Mrs. Urquhart testified that she and her husband desire that their sons each receive a faith-based education.

Mrs. Urquhart further testified that, in order to be able to provide their sons with a parochial education, the family has made and continues to make numerous and substantial sacrifices in other aspects of their budgeting. The family of four lives in a small, two-bedroom home with a value of approximately $47,000 and monthly mortgage payments of about $500, including an escrow for real estate taxes and insurance. Debtors drive high-mileage, old vehicles which are owned outright. The family rarely dines out, never takes vacations, and owns no luxury items.

Finally, Mrs. Urquhart testified that, based upon her own independent research and analysis, the parochial schools which her sons attend are far safer and provide an academically superior education as compared to the Decatur public schools which her sons would otherwise attend. Mrs. Urquhart testified about disciplinary problems and pervasive violence at MacArthur High School and the school's poor reputation in the community. She also stated that reports regarding Illinois standard testing demonstrate that the Decatur public schools are below the state average. Based upon these and her other perceptions, Mrs. Urquhart testified that she believes that her sons are receiving better educations at their respective parochial schools than they would receive if they attended Decatur public schools. For these reasons, Debtors seek confirmation of their Plan which allows for payment of the parochial school tuition expense.

If the trustee or a holder of an allowed unsecured claim objects to confirmation of a Chapter 13 plan, the plan cannot be confirmed unless all unsecured claims will be paid in full or the plan provides that all of the debtor's projected disposable income to be received during the applicable commitment period will be applied to make payments to unsecured creditors under the plan. 11 U.S.C. §1325(b)(1). "Disposable income" means current monthly income received by the debtor less, *inter alia,* amounts reasonably necessary to be expended for the maintenance or support of the

debtor or a dependent of the debtor.  11 U.S.C. §1325(b)(2).  A debtor bears the burden of showing that an expense is reasonable for confirmation purposes.  In re McNichols, 249 B.R. 160, 168 (Bankr. N.D. Ill. 2000).

Following the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), reasonably necessary expenses which may be deducted in a debtor's calculation of projected disposable income are determined in one of two ways. "Amounts reasonably necessary to be expended . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has [annualized] current monthly income . . . greater than [the applicable] median family income of the applicable State. . . ."  11 U.S.C. §1325(b)(3).  Thus, for above median income debtors, the reasonably necessary expenses are determined by using the "Calculation of Deductions from Income" at Part IV of Form B22C, which includes both fixed amounts from national and local Internal Revenue Service standards and certain actual expenditures.  *See* 11 U.S.C. §707(b)(2)(A)(ii).  For below median income debtors, expenses are set forth on Schedule J and are subject to scrutiny, objection, and judicial analysis.  In re Cleary, 357 B.R. 369, 372-73 (Bankr. D. S.C. 2006).  What expenses are "reasonably necessary" is a question of fact to be determined in the context of individual debtors and their dependents. 2 Keith M. Lundin, *Chapter 13 Bankruptcy*, 3d ed. §165.1 (2000 & Supp.

2004). "On similar facts, outcomes will vary from judge to judge, from jurisdiction to jurisdiction, from one part of the country to another and even over time within the same jurisdiction." Id.

In his Objection to Confirmation, Trustee advances the notion that, to the extent parochial school tuition expenses are ever determined to be reasonably necessary, below median income debtors should be subject to the same private school expense limitation as above median income debtors. That limit is set forth at line 43 of Form B22C and is currently $137.50 per month per child. In his Objection to Confirmation, Trustee cites a desire to be "uniform" as his basis for suggesting imposition of the above median income debtor limit on below median income debtors.

There is no basis in law or in public policy to support this argument, and this Court squarely rejects it. BAPCPA provides completely separate methodologies for calculating the expenses to be included in figuring disposable income for above median income debtors and below median income debtors. Sections 1325(b)(3) and 707(b)(2) provide the manner by which allowable expenses for above median income debtors are to be calculated. This is part of BAPCPA's comprehensive scheme setting forth the prerequisites for confirmation of a Chapter 13 plan for above median income debtors. In some instances, above median income debtors are entitled to deduct expenses without proof of an actual expenditure. *See* In re Moorman, 376 B.R. 694, 697-99 (Bankr. C.D. Ill. 2007); *see also* In

re Ross-Tousey, 549 F.3d 1148, 1157 (7th Cir. 2008) (under similar means test calculation for Chapter 7 debtors, debtors may deduct applicable national and local IRS standards without proof of actual expenditures).

With respect to below median income debtors, reasonable and necessary expenses remain limited to actual expenses incurred and are subject to scrutiny by the trustee, unsecured creditors, and the court.  Debtors continue to bear the burden of proving reasonableness and necessity.  BAPCPA did not change the analysis for determining reasonable and necessary expenses for under the median income debtors.

It is noteworthy that, if the Debtors were entitled to claim expenses under the methodology utilized for above median income debtors, they would be entitled to two monthly ownership expenses of $489 each, or a total of $978, for the two older, high mileage vehicles they own outright.  Those deductions alone would more than offset the Debtors' monthly $600 expense for parochial school tuition.  But the Debtors are neither entitled to the over the median income vehicle deductions nor bound by the over the median income limits for educational expenses.  The methodology for calculating allowable expenses for above median income debtors is irrelevant to below median income debtors.  The determination of whether expenses are reasonable and necessary for under the median income debtors remains a fact-driven analysis and must be made on

a case-by-case basis.

Determining what is "reasonably necessary" requires a court to "engage in the unenviable task of scrutinizing the debtor's schedule of income and expenditures." In re Johnson, 241 B.R. 394, 398 (Bankr. E.D. Tex. 1999). There is no bright line rule for determining what is "reasonably necessary." In re Nicola, 244 B.R. 795, 797 (Bankr. N.D. Ill. 2000) (citation omitted). The scope of a court's review of a debtor's living expenses is narrow. In re Fries, 68 B.R. 676, 683 (Bankr. E.D. Pa. 1986). In general, §1325(b) should not be considered a mandate for a court to superimpose its values and substitute its judgment for those of the debtor. In re Navarro, 83 B.R. 348, 355 (Bankr. E.D. Pa. 1988); *see also* 8 *Collier on Bankruptcy* ¶1325.08[4][b][ii] *at* 1325-59 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). "In short, the court cannot and should not order debtors to alter their lifestyles where there is no obvious indulgence in luxuries . . . To engage in such close judgments and supervision would be to contravene the intent of Congress. It would also place impossible burdens on the court in determining the absolute necessity of every expense in each debtor's budget." Id. *at* 1325-60. While a court should not lightly substitute its judgment for that of the debtor, §1325(b) requires that it do so when any one of the following factors is present: (a) the debtor proposes to use income for luxury goods or services; (b) the debtor proposes to commit a

-10-

clearly excessive amount to non-luxury goods or services; (c) the debtor proposes to retain a clearly excessive amount of income for discretionary purposes; (d) the debtor proposes expenditures which would not be made but for a desire to avoid payments to unsecured creditors; and (e) the debtor's proposed expenditures as a whole appear to be deliberately inflated and unreasonable. Navarro, 83 B.R. *at* 355-56.

None of the aforementioned factors is present in this case and, under the uncontroverted facts and evidence presented, this Court has little difficulty finding that the parochial school tuition expenses in this case are reasonably necessary.

Mrs. Urquhart made a strong and credible witness and her testimony was solid and persuasive. Mrs. Urquhart made no impassioned pleas, nor did she demagogue her family's religious faith.[3] Rather, her testimony presented a convincing case that the parochial school tuition expenses were reasonably necessary expenses in her family's budget. Beyond her family's desire that

---

[3] In his Post-Trial Memorandum, Trustee cites James Madison's *The Federalist No. 10* which warns against factions - such as religious factions - united by "passion". See *The Federalist No. 10* (James Madison). Mrs. Urquhart's testimony was persuasive, not because of her religious devotion or any evident passion, but because she was articulate and forthright in explaining why she and her husband made the choice and concomitant financial sacrifice to send their sons to parochial school. Trustee also cites *Parade Magazine* for the premise that "Religion in America is complicated." Although both citations were, on some level, interesting, neither was helpful in resolving the legal issues before this Court.

their sons have a faith-based education, Mrs. Urquhart demonstrated that they had first-hand experience with the public school system in Decatur, and that their experience was overwhelmingly negative.[4] Additionally, her testimony regarding the reputation of the Decatur public schools and her understanding of their students' performance on standardized tests further demonstrated Debtors' rationale in reaching the decision to send their sons to parochial school.[5]

The Court finds it especially relevant and persuasive that the Debtors, knowing their budgetary constraints, have made it a conscious practice to otherwise live well beneath their means in order to budget for the parochial school tuition expenses. *See* In re Grawey, 2001 WL 34076376 *at* *6 (Bankr. C.D. Ill. 2001) (parochial school tuition for children is a reasonable and necessary expense where mother sacrificed other basic necessities). The facts that Debtors live in a very modest home and drive older

---

[4] Some courts have held that the availability of good quality education at a safe public school is a relevant factor in determining whether private or parochial school tuition expense is reasonably necessary. *See* Univest-Coppell Village, Ltd. v. Nelson, 204 B.R. 497, 499, 500 (E.D. Tex. 1996); In re Weiss, 251 B.R. 453, 462 (Bankr. E.D. Pa. 2000).

[5] There was some dispute as to whether Mrs. Urquhart's data regarding standardized testing were accurate and complete. There was also some question regarding the veracity of the sources of Mrs. Urquhart's information about violence in the Decatur public schools. Both of these issues are non-starters. First, the evidence was unrebutted. Second, what matters most is Debtors' perceptions and their effect on Debtors' financial choices and decisions, not whether their perceptions are based on solid and irrefutable statistical evidence.

model, high-mileage vehicles evince the ongoing financial sacrifice which Debtors have made and are willing to continue to make in order to provide for their sons' parochial educations. If the Debtors had monthly car payments totaling $600, the Trustee would not have batted an eye and would not have objected to confirmation based on a failure to commit projected disposable income to Plan payments.

During closing arguments, Debtors' counsel referred to the aforementioned case of Nicola, in which the court overruled a Chapter 13 trustee's objection to confirmation and determined that monthly payments for Catholic school tuition were reasonably necessary expenditures. In Nicola, the court was persuaded by the modesty of the monthly expenditures, the fact that the school was a local Catholic school rather than a boarding school, the fact that the local public school options were perceived to be inadequate because of below average standardized test scores, the fact that the child had attended Catholic school for many years, and the fact that the child and parents were practicing Catholics and desired to send the child to Catholic school. The court noted that any of these facts alone may not have been sufficient to warrant a finding that the expense was reasonably necessary but that, taken as a whole, the facts led to the conclusion that the monthly tuition payments were reasonably necessary. Nicola, 244 B.R *at* 799. Here, virtually all the Nicola factors were

-13-

established by the testimony and exhibits presented by the Debtors. This Court must draw the same conclusion as the Nicola court. The Debtors' expenditure of $600 per month for parochial school tuition for their two sons is reasonable and necessary.

For the aforesaid reasons, the Court finds that the Debtors' $600 monthly expense for parochial school tuition is a proper deduction in calculating their projected disposable income and, accordingly, the Trustee's Objection to Confirmation of the Debtors' Second Amended Plan based on a failure to commit all projected disposable income to Plan payments should be overruled.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###